UNITED STATES MIDDLE DISTRICT

COURT OF FLORIDA

JACKSONVILLE DIVISION

Declaration of Truth and Facts

In Support of Civil Rights Complaint and Emergency Motion

for TRO and Preliminary Injunction

Case Title:

Faith Williams, Plaintiff

v.

Sheriff Brad Whitehead, et al., Defendants

Case No.: 3:25-CV-904-MMH-MCR _____ (To be assigned)

I, Faith Williams, a living woman, competent to testify to the facts herein, hereby

swear and affirm under penalty of perjury the following is true, correct, and based

on firsthand knowledge unless otherwise stated:

## I. INTRODUCTION

1. This Declaration is submitted in support of my 42 U.S.C. § 1983 Civil Rights Complaint and Emergency Motion for Temporary Restraining Order and Preliminary Injunction.

2. I am not an attorney. I am proceeding pro se and in forma pauperis, under threat of irreparable harm.

3. I am a peaceful, law-abiding American, who exercises her constitutionally protected rights to travel, speak, believe, and petition for redress of grievances.

## II. FACTUAL BACKGROUND (copied directly from Civil Complaint with small additions)

1. In August 2023, Plaintiff gave Sheriff Brad Whitehead verbal notice of her intent to lawfully exercise her constitutional right to travel within Union County. She presented valid federal precedent in support of this right. In response, Plaintiff was threatened with arrest if she were to be seen "driving," and was then escorted out of the sheriff's department. This entire exchange was audio recorded on her personal cellphone and backed up on multiple devices.

2. In April 2024, Plaintiff attended the monthly Union County meeting and publicly delivered an ultimatum to Sheriff Whitehead, either begin upholding his

sworn oath to protect the constitutionally secured rights of the people, or she would submit recorded evidence of his misconduct to the Florida Commission on Ethics. Within approximately 30 minutes of Plaintiff's public statement, the sheriff slow-drove past her residence multiple times and had someone fly a low-altitude drone directly over her home. The following day, she attempted to contact the sheriff's department for clarification, but instead received a series of harassing phone calls from Lieutenant Billy Miller, who returned my call then continued to call back a total of 8 times in a harassing and mocking manner. During these calls, he made unprofessional and degrading remarks, such as:

- "You're 50 years old and still living with your parents,"
- "How can we get this to go away?"
- This was a lie: "We don't have a drone... well, we do, but it's still in the box."

Later that same night, at exactly 11:08 p.m., Plaintiff received a call from the sheriff himself, from an "unknown" or "restricted" number. When she answered, he mockingly asked, "Is this Hungry Howie's?" and began pretending to order "a large pepperoni pizza," behaving like a middle school-aged child. Screenshots of the call logs documenting these harassing communications were saved to her

iCloud account, the same account that was later unlawfully accessed, stolen, and hijacked by the sheriff in an apparent effort to suppress this evidence.

3. The entire perimeter of Plaintiff's automobile displayed visible, fact based signage of well-grounded laws and Supreme Court case laws, Constitutional quotes, Bible verses, a DOT exempt PRIVATE sign/tag/plate, and other signs in the form of vinyl decals, such as:

- "No Trespassing" (on all 4 doors, as well as, trunk and hood),

- "Not in Commerce"

- "Not for Hire"

- "UCC 1-308"

- "Without Prejudice"

- "Honor Your Oath

4. On January 31, 2025, Plaintiff was stopped without probable cause by Union County Sheriff's Deputy Samuel Murphy, acting under the direct orders of Sheriff Brad Whitehead to pull her automobile over whenever seen on the road.

5. When the deputy demanded a license, Plaintiff informed him that she was not driving, she was traveling, in which no license is required, and directed him to read the signage on her automobile. He refused.

6. Plaintiff's window was unlawfully busted out, she was forcibly removed, and was arrested without lawful cause. Her constitutional signage was ignored entirely. The deputies were not following the law—they were following unlawful orders from the sheriff. Plaintiff has the right to ignore unlawful commands, particularly from untrained deputies who refuse to listen or engage in lawful discourse.

7. Plaintiff's automobile and purse were unlawfully searched under the false pretense of "inventory for towing." During the search, her glovebox was damaged, and the interior was left in disarray. Deputy Gladding aggressively ripped off Plaintiff's private DOT exempt sign rather than removing it properly. This unwarranted misconduct shows that the deputies never intended on returning her property.

8. Plaintiff's personal cellphone, which the sheriff knew contained evidence directly implicating him, was unlawfully seized by Deputy Murphy and handed over to Sheriff Whitehead. It was never returned to the Plaintiff.

9. While Plaintiff was in custody, her iCloud account was hijacked. This account contained recordings, photos, and evidence related to the unlawful traffic stop, prior interactions with the sheriff, and other critical data. It also included over 20 years of personal records, which Plaintiff can no longer access, but which the sheriff now possesses and has personal access to.

10. Sheriff Brad Whitehead then lied to the first appearance judge, falsely claiming Plaintiff said, "I am leaving the state after being bonded out." This malicious statement is completely fabricated, does not appear in any report or recording, and was used by Judge George Wright to unlawfully label Plaintiff a flight risk and set her bond at $10,000. This intentional deceit delayed her release, knowing full well a bondsman would not approve her bond, which wasn't fully successful as the bondsman accepted Plaintiffs bond request. This information was echoed to the Plaintiff immediately after her release from jail by the bail bondsman, Linda L. James.

11. The arrest and its fabricated justification were acts of retaliation for lawfully asserting Plaintiff's constitutional right to travel and for publicly taking a stand against local corruption and exposing the Sheriff's cocaine abuse and his recent

investigations, publicly. Union County does not tolerate individuals who stand on their rights or those who shine a spotlight on their misconduct, and who are widely known for "making whistleblowers go missing".

12. After her release, Plaintiff attempted to file motions and affidavits asserting her rights, challenging all jurisdiction, and demanding lawful remedy. All were denied or ignored by the court without explanation, Judge Wright admitted to only "briefly reviewing" them.

13. At Plaintiff's second pretrial hearing, Judge Mitchell Bishop abruptly silenced her after she invoked the Supremacy Clause of the U.S. Constitution, dismissing it as "absolute nonsense." Plaintiff had anticipated being interrupted and had just begun explaining her right to travel when Judge Bishop cut her off. He then unlawfully appointed an attorney over her repeated and explicit objections and blocked all further attempts to challenge jurisdiction. His behavior was hostile, unlawful, and intended to pressure Plaintiff into a plea deal, attempting to strip her of her right to appeal or pursue lawful claims by appointing her a public defender. This was later retracted via email/e-filing portal by Judge Bishop after Plaintiff's duel objections, and a Faretta hearing was scheduled.

14. At the third pretrial hearing on July 15, 2025, Judge Bishop continued to reject Plaintiff's jurisdictional challenges, attempted multiple times to proceed with a Faretta hearing without jurisdiction to do so, accused both the Plaintiff and her mother of privately recording the proceedings in the courtroom (violation of Plaintiffs First Amendment right to Freedom of Press) which was an attempt to intimidate Plaintiff and fill up her time with irrelevant accusations, after admitting that her publicly posted video of the hearing looked as though it was properly obtained through the court system. Judge

15. From the beginning, both Judge Wright and Judge Bishop have refused to honor Plaintiff's right to represent herself pro se. Judge Wright repeatedly overtalked her at the first pretrial hearing, while Judge Bishop outright silenced her at the second hearing.

16. The court has continuously refused to answer questions about probable cause and has denied every lawful assertion Plaintiff has made, violating her right to due process.

17. Both judges involved in this case are now under investigation by the Florida Judicial Qualifications Commission (JQC), yet the retaliation and suppression persist.

18. The ongoing abuse of process and suppression of Plaintiff's constitutional rights has severely aggravated a medical condition (NHL) that compromises her immune system under high stress. The emotional and physical toll of being silenced, denied access to the courts, and subjected to misconduct has caused serious health deterioration. If Plaintiff is unlawfully incarcerated again under the same unconstitutional conditions, the resulting stress may severely damage her body's ability to function, and could prove fatal. The court has been notified of this risk, yet continues to place her in harm's way without lawful cause.

19. Plaintiff has sent complaints and notices to the DOJ, FBI, FDLE, the Florida Commission on Ethics, and the Florida Attorney General, in which all were denied after the mere mention of the sheriff's name. All have failed to respond or take action, until July 8, when Plaintiff received what appears to be a referral letter from the DOJ to the FBI. The content of the letter was vague and unclear. A final notice and call to action is being sent to the FBI, though no response is expected due to nepotism and criminal misconduct cover-ups.

20. Most recent encounter: On August 3, 2025, Plaintiff contacted her bail bonds agent, Linda L. James, who is a direct witness to the fabricated statement made by Sheriff Brad Whitehead, which falsely labeled Plaintiff as a flight risk. When asked via text message if she was willing to testify regarding the sheriff's statement, specifically, his claim that Plaintiff said, "I'm leaving the state after bonding out", Defendant James refused, citing concern about "straining their relationship." Upon being informed that she would be subpoenaed, Defendant James became hostile, called Plaintiff by phone, cursed her out, and threatened to revoke Plaintiff's bond if the subpoena was issued. This conduct constitutes witness intimidation, retaliation, and obstruction of justice, as well as a deprivation of Plaintiff's constitutional rights under the First, Fifth, Sixth, and Fourteenth Amendments, including due process, the right to confront witnesses, and the right to call witnesses in her favor.

Defendant James also made additional retaliatory statements, including:

• Threats to revoke bond if Plaintiff missed check-ins;

• Threats to file a countersuit for harassment and defamation;

• Retraction of a prior verbal agreement allowing Plaintiff to check in via text;

• Blocking Plaintiff's ability to check in using the same method previously agreed upon and consistently used, violating her own contract.

21. These ongoing acts constitute a coordinated pattern of unlawful retaliation, civil rights violations, religious suppression, theft of property, obstruction of justice, and denial of due process—coupled with internal corruption, conspiracy, cover-ups, and abuse of government power.

22. Furthermore, it is relevant to note that the entire North Florida region, particularly Union County and its surrounding areas, appears to operate with a troubling degree of collusion in systemic misconduct. Neighboring Bradford County recently disbanded its police department due to corruption, and the nearby town of Waldo, located in Alachua County, permanently dissolved its police department in 2014 and has yet to reestablish one.

23. Plaintiff also highlights the disproportionate number of prisons located within and around Union County, coupled with a severe lack of local employment opportunities, bare-minimal access to entertainment (only one public park) or any community development, a visibly increasing homeless population, and a widespread drug crisis (including Sheriff Brad Whitehead's multiple criminal and federal investigations for his widely-known abuse of cocaine and prescription pain pill addiction that went absolutely nowhere due to extreme nepotism), particularly in Lake Butler and adjacent counties. These factors raise serious concerns about whether the county's continued operation is sustained through the targeted criminalization and incarceration of its own citizens, thereby funneling individuals

into the prison system to economically support a deeply corrupt infrastructure. Plaintiff requests that this court moves to encourage investigative authorities to immediately look into this matter.

III. SWORN ASSERTIONS

1. I have made every effort to peacefully and lawfully assert my rights, resolve the fraudulent charges, and halt the retaliation.

2. I have submitted complaints to multiple state and federal agencies including the DOJ, FDLE, and Florida Attorney General, all of which have ignored my complaints. Recently, the DOJ responded to my complaint made in February, with a referral to the FBI. I am actively pursuing a meaningful investigation without expectations of a response, due to nepotism and cover-ups of misconduct. I also submitted a complaint to the JQC for both judges, which was accepted and issued a docket number. I was told that my complaints would likely be addressed in mid July, but I've heard nothing. I anticipate it will be addressed in late August, Early September.

3. The ongoing retaliation, malicious prosecution, judicial misconduct, obstruction of justice, theft  and destruction of property, falsification of records, and deprivation of rights under color of law have caused me irreparable harm.

4. I affirm that every statement made herein is true to the best of my knowledge and is submitted for the purpose of obtaining emergency protection and just remedy.

## IV. DEMAND FOR RELIEF

5. I respectfully request this Honorable Court to:

• Grant my Motion to Proceed In Forma Pauperis,

• Accept this Affidavit of Truth as sworn evidence,

• Immediately halt any further prosecution or hearings scheduled for July 15, 2025,

• Grant the Emergency TRO and Preliminary Injunction against further retaliation,

• Protect my access to the courts and my property,

• And order the return of all stolen digital property, including my iCloud account.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 7th day of August, 2025.

Signature: _____

Faith Williams

Sui Juris Pro Per Petitioner

530 SW 1st St.

Lake Butler, FL 32054

352-538-8581

Tat2L80.fw@gmail.com

Jesus.junkie4life@yahoo.com