# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF FLORIDA

# JACKSONVILLE DIVISION

Casey Faith Williams,

Plaintiff,

v.                                                   Case No. 3:25-cv-00904-JEP-MCR

Sheriff Brad Whitehead, et al.,

Defendants.

_____/

# PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT (REGARDING COUNTS I–III AND V–VI)

## INTRODUCTION

Plaintiff, Casey Faith Williams, submits this Opposition to Defendants' Motion to Dismiss (Doc. 30). Defendants seek dismissal by asking this Court to improperly resolve disputed facts, credit Defendants' interpretation of events, and impose heightened pleading standards not required by the Federal Rules of Civil Procedure. When the Amended Complaint is read as a whole, and when all factual allegations are accepted as true with reasonable inferences drawn in Plaintiff's favor, Plaintiff has plausibly stated claims for relief under 42 U.S.C. § 1983 and the United States Constitution.

Plaintiff further advises the Court that she intends to update and further amend her pleading as a matter of course and in good faith. Plaintiff's prior amendment was filed under extraordinary constraints, including the denial of an application to proceed in forma pauperis after the filing fee had already been paid in full, Plaintiff's lack of access to her original, complete complaint at the time, and limitations caused by Plaintiff's circumstances and location during that period. As a result, Plaintiff was compelled to rely on an older draft of the complaint and a generic online template to meet court deadlines. Plaintiff raises this clarification not as a concession of deficiency, but to provide context for the structure and formatting of the Amended Complaint and to underscore that any perceived lack of precision is the product of procedural hardship rather than an absence of substantive claims. Plaintiff intends to cure and clarify any such issues through a forthcoming amended pleading if permitted by the Court.

## A. Improper Labeling and Character Attacks Are Irrelevant to Rule 12 Analysis.

Defendants have attempted to characterize Plaintiff as a "sovereign citizen." Plaintiff expressly denies that label. The term is inaccurate, speculative, and irrelevant to the legal sufficiency of

2

Plaintiff's claims. Courts routinely reject pejorative characterizations that are untethered to the elements of the causes of action or the Rule 12 pleading standards. Plaintiff brings conventional constitutional claims under 42 U.S.C. § 1983, invokes settled Fourth, First, and Fourteenth Amendment principles, and seeks relief available under federal law. Whether a litigant holds particular beliefs or uses nonstandard terminology does not diminish the plausibility of pleaded facts or authorize dismissal.

Moreover, labeling Plaintiff as a "sovereign citizen" is a conclusory characterization that does not describe any legally cognizable status and adds nothing to the Court's Rule 12 inquiry. Such rhetoric invites improper credibility assessments and distracts from the required analysis—whether the Complaint alleges sufficient facts to state plausible claims for relief. The Court should disregard character attacks and evaluate the pleadings on their merits.

## LEGAL STANDARD

At the Rule 12(b)(6) stage, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. The Court may not resolve factual disputes, weigh evidence, or determine credibility. A complaint need only state a plausible claim for relief, not prove the claim. Pro se pleadings must be liberally construed.

## STATEMENT OF FACTS

1. Plaintiff is a private American and a child of God who brings this action under the Constitution and laws of the United States, including 42 U.S.C. §§ 1983 and 1985(3). (Am. Compl. ¶¶ 1, 3).

2. In or about August 2023, Plaintiff personally notified Defendant Sheriff Brad Whitehead that she intended to exercise her constitutionally protected right to travel without commercial restrictions. Plaintiff alleges Sheriff Whitehead responded with threats of arrest if Plaintiff were seen driving without a license. This engagement was audio recorded by the plaintiff. (Am. Compl. 21).

3. Following Plaintiff's public criticism and condemnation of Sheriff Whitehead in April, 2024, Plaintiff alleges Sheriff Whitehead and Deputy William H. Miller Jr. engaged in retaliatory conduct, including repeated drive-bys of Plaintiff's residence, numerous harassing and unnecessary phone calls in a single day, and aerial drone surveillance over Plaintiff's home immediately after the county meeting. (Am. Compl. 22).

4. On January 31, 2025, Plaintiff was traveling in her private automobile when she passed Deputy Samuel A. Murphy traveling in the opposite direction. Plaintiff alleges that Deputy Murphy observed Plaintiff's automobile at that time but could not have observed Plaintiff's plate. Plaintiff alleges Deputy Murphy immediately executed an abrupt and unlawful U-turn on the roadway and began following Plaintiff's automobile without having observed any traffic infraction or violation. Plaintiff alleges this conduct demonstrates that Plaintiff herself, and her automobile, were being targeted prior to the stop, and that Deputy Murphy was acting pursuant to direction or authorization from Sheriff Whitehead rather than based on any lawful observation. (Am. Compl. 23).

4

5.  During the stop, Plaintiff alleges Deputy Murphy approached Plaintiff's driver-side window and remained there for less than two minutes before escalating the encounter. Plaintiff alleges that within this brief period, Deputy Murphy issued commands not supported by lawful authority and, without providing reasonable time or lawful justification, broke the window of Plaintiff's vehicle and forcibly removed Plaintiff from the automobile. (Am. Compl. 23).

6.  Plaintiff alleges she was then placed under arrest without lawful basis and that Deputy Murphy seized Plaintiff's personal cellular phone incident to the arrest. (Am. Compl. 23).

7.  Plaintiff further alleges that Deputies Gladding, Murphy, and Sellers conducted a warrantless search of her automobile, referred to it as "doing inventory", damaged her window and glove compartment, and seized her private plate, which Plaintiff alleges was not issued by the Department of Motor Vehicles. (Am. Compl. 24).

8.  Plaintiff alleges that following the arrest, Plaintiff's personal cellular phone was never returned to her. Plaintiff further alleges that all inquiries she made regarding the whereabouts of her phone were ignored, except for one unidentified deputy who stated to Plaintiff, as he was walking out of the room, "Sometimes things go missing in the process." Plaintiff alleges that the seized phone contained digital evidence of misconduct by Sheriff Whitehead himself, and that Sheriff Whitehead was aware of the existence and contents of this evidence at the time of seizure. Plaintiff alleges the phone was taken and retained without intent to return, and under circumstances supporting an inference that the purpose was to suppress that evidence.

Plaintiff further alleges that her account was subsequently hacked and tampered with, which was verified when she attempted to access her iCloud account and discovered that both the associated email address and passcode had been changed to entirely different credentials. Plaintiff alleges this constituted a continuing deprivation of her property and access to evidence, not a temporary or incidental interference. Plaintiff alleges this unauthorized alteration was confirmed by her service provider. Plaintiff alleges that Sheriff Whitehead, or other affiliated representative ordered by the sheriff, altered or interfered with Plaintiff's iCloud account information, in order to conceal or suppress digital evidence of his own misconduct. (Am. Compl.   25).

9. Plaintiff alleges that Sheriff Whitehead provided false information to Defendant Judge George Wright during her arrest for retaliatory purposes, by claiming Plaintiff personally stated to him that she intended to leave the State of Florida after bonding out, which Plaintiff alleges directly resulted in her bond being increased to $10,000.00 and intended to keep her in jail until the first court date, which was approximately 45 days from her arrest date. Plaintiff, to date, has not seen or talked to Sheriff Whitehead personally, face-to-face, or by phone or any other means since the harassing and prank phone calls were made to her by the sheriff and his captain, Billy Miller on April 16, 2024. (Am. Compl.   26).

10. Plaintiff alleges these acts were not isolated but instead constituted a continuing course of retaliatory and unconstitutional conduct beginning with threats and harassment for protected speech, escalating to an unlawful stop and arrest, followed by a warrantless search and seizure, digital evidence tampering, and false statements to the judiciary that directly affected Plaintiff's liberty.

# ARGUMENT

## I. COUNT I – UNLAWFUL SEIZURE AND ARREST (FOURTH AMENDMENT)

### A. Disputed dashcam evidence cannot be resolved at the Rule 12 stage.

Defendants rely on dashcam footage to argue that the traffic stop, arrest, and subsequent search were lawful. Plaintiff expressly disputes both the completeness and the interpretation of the dashcam footage produced to Plaintiff and relied upon by Defendants. The dashcam footage does not include the beginning of the encounter and omits the critical moment when Plaintiff passed Deputy Murphy traveling in the opposite direction, prior to the abrupt U-turn. This omission is material because it would show that Deputy Murphy could not have observed Plaintiff's plate or any traffic infraction at the time he decided to turn around and follow Plaintiff's automobile.

Plaintiff alleges the deputy did not observe any suspicious conduct, traffic violation, or unlawful equipment issue from the front view of Plaintiff's automobile as it passed him. Plaintiff further alleges that the decision to execute an immediate U-turn and pursue her automobile occurred before any lawful basis for a stop could exist, supporting the inference that Plaintiff's automobile had been pre-identified and targeted pursuant to direction or authorization from Sheriff Whitehead. Because the dashcam footage omits this critical sequence and is subject to competing interpretations, it cannot be used to resolve factual disputes at the Rule 12 stage.

### B. Plaintiff plausibly alleges an unlawful stop, arrest, and use of force.

7

Plaintiff alleges she was stopped without probable cause or reasonable articulable suspicion, forcibly removed from her automobile after her window was broken, and arrested without lawful authority. (Am. Compl. 23). Plaintiff further alleges that Deputy Murphy had no lawful basis to stop her vehicle at the moment he initiated pursuit, as law enforcement may not conduct a traffic stop based on a mere assumption or suspicion that a driver lacks a valid driver's license.

Courts have repeatedly held that an officer's unsupported assumption that a motorist is unlicensed does not constitute reasonable suspicion or probable cause to initiate a stop. See, e.g., Delaware v. Prouse, 440 U.S. 648, 663 (1979) (holding that stopping an automobile to check a driver's license absent reasonable suspicion is unconstitutional); United States v. Chanthasouxat, 342 F.3d 1271, 1276–77 (11th Cir. 2003) (reasonable suspicion must be based on specific, articulable facts, not mere hunches).

Plaintiff further alleges that after initiating the stop without lawful basis, Deputy Murphy approached Plaintiff's vehicle and, within less than two minutes, escalated the encounter by breaking Plaintiff's window and forcibly removing her from the automobile without providing reasonable time or lawful justification. Whether the stop, arrest, and use of force were lawful are fact-intensive inquiries that cannot be resolved on a motion to dismiss.

## C. Plaintiff plausibly alleges unlawful search and seizure.

Plaintiff alleges Deputies Gladding, Murphy, and Sellers conducted a warrantless search of her automobile, damaged her property, and seized her private plate. (Am. Compl. 24). Whether any exception to the warrant requirement applies is a factual and legal issue that cannot be resolved at the pleading stage.

### C.1. The traffic stop was pretextual.

Plaintiff alleges the traffic stop was pretextual, undertaken not for the purpose of enforcing traffic laws, but to carry out a prior directive to target Plaintiff and her automobile. Plaintiff alleges that Deputy Murphy initiated pursuit and executed an immediate U-turn without observing any traffic violation, equipment defect, or suspicious conduct, and before any lawful basis for a stop could exist. When viewed in conjunction with prior verbal threats and directives issued by Sheriff Whitehead, these facts support a plausible inference that the stated justification for the stop was not the true reason for the seizure.

### D. Supervisory liability is plausibly alleged.

Plaintiff alleges the stop and arrest were not the product of an individual deputy's independent judgment, but instead flowed directly from prior directives issued by Sheriff Whitehead. Specifically, Plaintiff alleges that during a requested in-person meeting at the Union County Sheriff's Office, Sheriff Whitehead, in the presence of two detectives, verbally informed Plaintiff that she would be arrested if she were seen driving without a license. Plaintiff alleges that this meeting was audio recorded. Plaintiff further alleges that the January 31, 2025 stop and arrest were carried out consistent with and in furtherance of that explicit directive, supporting a plausible inference that Sheriff Whitehead authorized, directed, or knowingly approved the unconstitutional conduct at issue. At the pleading stage, these allegations are sufficient to state a plausible claim for supervisory liability under 42 U.S.C. § 1983.

## II. COUNT II – FIRST AMENDMENT RETALIATION

9

## A. Protected speech.

Plaintiff alleges she engaged in protected speech by publicly criticizing and condemning Sheriff Brad Whitehead regarding his conduct and policies. (Am. Compl. ¶¶ 21–22). Such speech lies at the core of First Amendment protection.

## B. Adverse actions.

Plaintiff alleges that, following her protected speech, Defendants engaged in a series of adverse actions, including repeated drive-bys of Plaintiff's residence, aerial drone surveillance, numerous harassing phone calls, including a prank call made by the Sheriff himself the following day, and ultimately a targeted traffic stop, arrest, the creation of false statements in malicious retaliation, the seizure of Plaintiff's property, and tampering with known evidence. (Am. Compl. ¶¶ 22–24).

## C. Causal connection.

Plaintiff alleges a causal connection between her protected speech and Defendants' adverse actions based on temporal proximity, the escalating nature of Defendants' conduct following her speech, and the alleged direction or authorization of the stop by Sheriff Whitehead. (Am. Compl. ¶¶ 21–23).

Plaintiff further alleges that Defendants' conduct—including surveillance, repeated harassment, explicit threats of arrest, targeting of Plaintiff's automobile, and ultimate arrest—was sufficiently severe to chill a person of ordinary firmness from continuing to engage in protected speech, including public criticism of law enforcement officials. Plaintiff alleges Defendants' actions

were intended to deter, and did deter, the exercise of Plaintiff's First Amendment rights at the pleading stage.

## D. Municipal and supervisory liability.

Plaintiff alleges the retaliatory conduct was undertaken or directed by Sheriff Whitehead, a final policymaker for the Union County Sheriff's Office, which is sufficient at the pleading stage to state a claim for municipal liability without the need to plead a widespread custom or policy. (Am. Compl. ¶¶ 21–23).

## III. COUNT III – DENIAL OF DUE PROCESS AND FAIR TRIAL

Plaintiff alleges that Defendants' conduct deprived her of liberty and fair judicial process without due process of law. Plaintiff alleges that law enforcement officers initiated and carried out an unlawful stop and arrest, conducted a warrantless search and seizure, and that Sheriff Whitehead later provided false information to the court concerning Plaintiff's intent to leave the state, directly resulting in an increased bond amount. (Am. Compl. ¶¶ 23–26).

Plaintiff further alleges that deputies involved in the stop, arrest, and search either directly participated in or failed to prevent constitutional violations, and that these actions foreseeably affected subsequent judicial proceedings. Section 1983 liability extends to individuals who cause or contribute to due process violations, even if they are not the ultimate decision-makers. At the pleading stage, Plaintiff is not required to identify internal communications or delineate each Defendant's precise role, as such information is uniquely within Defendants' possession and subject to discovery.

## IV. COUNT V – RELIGIOUS FREEDOM

Plaintiff alleges sincerely held religious beliefs informing her conduct and alleges retaliatory and discriminatory enforcement of laws by Defendants. Courts may not assess the validity or orthodoxy of religious beliefs at the pleading stage. Whether Defendants' actions were neutral or retaliatory is a factual issue not suitable for dismissal. To the extent statutory claims are disputed, Plaintiff's constitutional Free Exercise claims remain viable.

## V. COUNT VI – FAILURE TO INTERVENE

Plaintiff alleges that multiple deputies were present during the January 31, 2025 stop, arrest, and search and were aware, or should have been aware, that constitutional violations were occurring. Plaintiff alleges these deputies had a realistic opportunity to intervene to prevent or limit the unlawful seizure, use of force, and warrantless search, yet failed to do so. (Am. Compl. ¶¶ 23–24).

Whether any individual deputy had sufficient time, proximity, or authority to intervene is a fact-intensive inquiry that depends on evidence not available to Plaintiff prior to discovery. At the pleading stage, Plaintiff has sufficiently alleged presence, awareness, and failure to act to state a plausible failure-to-intervene claim.

## VI. RULE 12(e) – MORE DEFINITE STATEMENT

12

Plaintiff further alleges that relevant evidence has not been preserved or produced in full, including the complete dashcam footage capturing the initiation of the stop and Plaintiff's seized cellular phone containing digital evidence. Plaintiff raises this issue solely to preserve her rights and does not seek evidentiary findings or sanctions at this stage.

Defendants alternatively seek a more definite statement under Rule 12(e), asserting Plaintiff's allegations are vague or ambiguous. Plaintiff's Amended Complaint, however, identifies the relevant actors, the general timeframe, the constitutional rights at issue, and the course of conduct giving rise to each claim. Rule 12(e) is not intended to require evidentiary detail or substitute for discovery. To the extent Defendants seek additional specificity regarding internal decision-making, communications, or officer-by-officer actions, such information is uniquely within Defendants' possession and appropriately obtained through discovery, not pleading.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the alternative, Motion for a More Definite Statement (Doc. 30) should be DENIED.

Respectfully submitted,

/s/ Casey Faith Williams

Plaintiff, Sui Juris, In Propria Persona (Pro Per)

530 SW 1st St,

Lake Butler, Florida 32054

13

Tat2L80.fw@gmail.com

Jesus.junkie4life@yahoo.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of January, 2026, a true and correct copy of the foregoing was served on counsel for Defendants by U.S. Mail and/or electronic mail, as counsel has appeared in this matter and as permitted by Federal Rule of Civil Procedure 5(b). Plaintiff does not have access to the Court's CM/ECF electronic filing system. Service was therefore effected by mailing and/or emailing the document to counsel of record at their addresses on file with the Court.

/s/ Casey Faith Williams

14